UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE COLEMAN,

        Plaintiff,

v.                                           Case number 05-73200
                                                  Honorable Julian Abele Cook, Jr.

JASON HORTON, ET AL.,

        Defendants.

## ORDER

On August 18, 2005, the Plaintiff, Lawrence Coleman, filed a Complaint in which he charged the Defendants, Jason Horton, Howard Schwartz, Lawrence Dudek, Sharon LaDuke and other "John Does," with a variety of civil wrongful acts, all of which are actionable under the law. Two of the Defendants, Jason Horton and Lawrence Dudek, have now joined together in submitting a motion to dismiss pursuant to Fed.R. Civ. P. 12(b)(6). A third Defendant, Sharon LaDuke, has also filed a motion to dismiss, as well as a petition for the imposition of sanctions against Coleman and his counsel under Fed.R. Civ. P. 11.

For the reasons that have been set forth below, the Court will grant the Defendants' motions for dismissal. However, the Court will deny the application for sanctions that has been filed by LaDuke.

I.

The foundation for this lawsuit arises out of a divorce proceedings between Verladia Reed and Gregory J. Reed in the Wayne County Circuit Court of Michigan. One of the contested issues

in this domestic relations litigation involved a parcel of unimproved real estate (totaling approximately 227.54 acres of land) in Springfield Township, Michigan. On April 28, 2003, Judge Kathleen MacDonald (1) determined that the Springfield Township property was owned by AHR Packaging Consultant Corporation ("AHR") which, in turn, was solely owned by Gregory J. Reed, (2) concluded that the parties' prenuptial agreement was void, and (3) appointed Jason Horton to serve as the Receiver.[1]

On February 13, 2004, Judge MacDonald (1) authorized a corporate entity known as "Equestrian Estates II" to intervene in the *Reed case*, and (2) directed Gregory J. Reed, in his capacity as the general partner of Equestrian Estates and as the owner of AHR, to execute the requisite instruments of conveyance to the designated third purchasers on behalf of AHR and Equestrian Estates. An appeal to the Michigan Court of Appeals followed.

On February 19, 2004, Equestrian Estates filed a bankruptcy petition in the U.S. Bankruptcy Court for the Eastern District of Michigan, in which it claimed to be the owner of the Springfield Township property. Despite the pendency of this bankruptcy case which had triggered the placement of an automatic stay pursuant to 11 U.S.C. § 362, Coleman, who identified himself as

---

[1] As the Receiver in this domestic relations litigation, Horton was ordered to take immediate possession of, manage and sell the Springfield Township property. His appointment included specific enumerated powers and detailed the method by which he should disburse the proceeds from the sale(s) of the parcels. On December 22, 2003, Judge MacDonald authorized the sale of 30.15 acres of the Springfield Township property for $225,000 along with the payment of a commission to Howard Schwartz, a real estate broker. Approximately two weeks later (January 9, 2004), Judge MacDonald entered a second order which authorized the sale of 197 acres of the Springfield Township land for a minimum price of $570,000 with the potential for an additional remuneration for street interconnection rights from the future development of the adjoining Equestrian Estates property.

a limited partner of Equestrian Estates, filed a lawsuit in this federal court on April 20, 2004,[2] claiming to possess an ownership interest in a portion of the Springfield Township land.[3] However, this case was dismissed on February 7, 2005 after the Court concluded that he had (1) failed to obtain the requisite authority from the Wayne County Circuit Court (as the appointing entity) to initiate a lawsuit against the Receiver, as required by the law in Michigan,[4] and (2) "filed this lawsuit . . . in violation of existing federal law which mandates the imposition of an automatic stay whenever a petition for protection under the bankruptcy laws of the United States is filed."

On the following day (February 8, 2005), the Michigan Court of Appeals remanded the *Reed* case after concluding that the Wayne County Circuit Court judge had erred when she failed to enforce the terms of the parties' prenuptial agreement:

> [B]ecause the trial court erred by finding that the [Springfield Township] property was part of the marital estate and because the court made no finding that it was appropriate under a statutory exception to award plaintiff a portion of this property, it was unnecessary to appoint a receiver. Accordingly, the trial court abused its discretion.

*Reed v. Reed*, 693 N.W. 2d 825, 844 (Mich. 2005) (internal citations omitted).

---

[2] For the purpose of clarity, the litigation that was initiated on April 20, 2004 will be designated in this Order as "Coleman I."

[3] In Coleman I, the Plaintiff also asserted claims against other unnamed individuals as defendants, some of whom were prospective purchasers of the Springfield Township property. In Coleman I, he made a claim to quiet title, and asserted violations of due process, equal protection, fraudulent conveyance, slander of title, tortuous interference, abuse of process, and intentional infliction of emotional distress.

[4] In its Order of February 7, 2005, this Court also determined that the Plaintiff in Coleman I had failed to proffer a sufficiency of evidence that the Receiver had committed fraud, which, if established, would have alleviated the statutory requirement to obtain leave from the Wayne County Circuit Court.

On August 18, 2005, the Plaintiff reinitiated Coleman I by filing a Complaint with this Court, in which he charged the Defendants with violations of such tortious acts as due process, violation of equal protection clause, fraudulent conveyance, slander of title, tortious interference with business relationship, abuse of process, and intentional infliction of emotion distress.[5] Although these claims are virtually identical to the issues that were raised by him in the first litigation, Coleman did not seek to quiet title in the lawsuit which is now pending before this Court. As the Plaintiff in Coleman II, he also added claims against Lawrence Dudek (attorney for the Receiver), and Sharon LaDuke (attorney for Verladia Reed).

II.

A full analysis of the issues that have been raised in the Defendants' motions to dismiss will not be necessary at this time because they have already been addressed, analyzed, and resolved by the Court in its Order of February 7, 2005. In essence, this Court finds that there is no reason to modify its reasoning or its conclusions on the basis of this record. Nevertheless, Coleman insists that the decision by the Michigan Court of Appeals has changed the legal posture of the *Reed* litigation as it relates to his quest for relief in the lawsuit that is currently pending before this Court.

In his challenge to the merit of the Defendants' motions, Coleman submits that "the Michigan Court of Appeals expressly stated [that] the receivership is to be terminated." Br. Supp. Pl.'s Resp. Defs. Horton's & Dudek's Mot. Dismiss, at 4 & 10. This Court disagrees. Significantly, the Michigan Court of Appeals did not void the Order which appointed Horton to serve as the Receiver:

> When a court is without jurisdiction to appoint a receiver, the property

---

[5]This case, which now before the Court, will be called "Coleman II."

> inappropriately obtained by the receiver should be restored, as nearly as possible, to the party from whom it was obtained. In this case, because the trial court possessed jurisdiction to appoint a receiver, its order is voidable, not void. Further, because the receiver has taken steps to sell portions of the disputed property, it will be necessary for the trial court on remand to fashion appropriate orders to terminate the receivership as may be equitable. . . . "The court may terminate any receivership and return the property held by the receiver to the debtor whenever it appears to be to the best interest of the debtor, the creditors and other interested." Moreover, on remand, the trial court may make further findings of fact and enter such orders as are supported by those findings, including continuing the receivership."

*Reed v. Reed*, 693 N.W. 2d 825, 844 (Mich. 2005) (internal citations omitted).

As is evident from reading this opinion, the Michigan Court of Appeals only determined that the *Reed* divorce proceedings should be remanded to the trial court where it shall "make further findings of fact and enter such orders as are supported by those findings, *including continuing the receivership.*" *Id.* (emphasis added).[6]

Notwithstanding, Coleman contends that "the [Michigan] Court of Appeals issued a decision that [his] land is not a part of the *Reed* marital estate . . . ." Pl.'s Complaint, at 4. This assertion is incorrect. Foremost, it should be noted that a fair reading of the opinion by the Michigan Court of Appeals on February 8, 2005 reveals no mention of Coleman or his interest in the Springfield Township property. Moreover, he has failed to provide the Court with any citation or quoted language from the February 8th decision by the Michigan Court of Appeals or any other authority to support this assertion.

---

[6] Moreover, Horton and Dudek correctly argue in their reply brief that the "Wayne County Circuit Judge . . . entered an order on October 28, 2005 which denied the motion of Gregory Reed to vacate and terminate the receivership." Further, they collectively maintain that her "order of October 28, 2005 further re-affirms that litigants are not allowed to file collateral litigation against the receiver in other courts without first obtaining the leave of the Wayne County Circuit Court." Reply Br. Support Mot. Defs. Horton and Dudek Dismiss, at 2.

5

Finally, this Court, having reviewed the February 7th Order, as well as the pleadings that have been proffered by the parties, has not found any reason to reject the Defendants' dispositive motions. The rationale and the conclusion that were reached by this Court on February 7, 2005 are fully incorporated by reference and serve as the legal basis for rejecting Coleman's arguments in opposition to the Defendants' motions. Accordingly, the Defendants' motions to dismiss must be, and are, granted.

III.

The Defendant, Sharon LaDuke, has also moved for the imposition of sanctions against Coleman and his attorney pursuant to Federal Rule of Civil Procedure 11(b). This Rule states, in pertinent part, as follows:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

In her motion, she asserts that Rule 11 sanctions are appropriate in this case because the Coleman's claims are devoid of any factual or legal basis. *See* Def. Sharon LaDuke's Br. Supp. Mot. Dismiss, at 10.  She maintains that "[a] reasonable inquiry would have disclosed to [Coleman and his] counsel that there was no basis in law or fact for making any allegation against Defendant LaDuke. In fact, the only purpose behind finding the Complaint against LaDuke was to harass her and was therefore filed for an improper purpose." *Id.*   Upon review of this issue, the Court finds that LaDuke, as the moving party, has not set forth a sufficient factual or legal basis, other than these conclusory remarks, to support her allegations.  Accordingly, LaDuke's request for sanctions must be, and is, denied.

    IT IS SO ORDERED.


Dated: March 3, 2006                                    s/ Julian Abele Cook, Jr.
      Detroit, Michigan                             JULIAN ABELE COOK, JR.
                                                            United States District Court Judge


### Certificate of Service

I hereby certify that on March 3, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                                   s/ Kay Alford
                                                                   Courtroom Deputy Clerk